**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DUQUENE PIERRE, | Civil Action No.: 18-3443 (JLL) |
| Plaintiff, | **OPINION** |
| v. | |
| STATE OF NEW JERSEY, TREASURY DEPARTMENT, *et al.*, | |
| Defendants. | |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of the Motions to Dismiss Plaintiff Duquene Pierre's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendant County of Union ("Union"), and Defendants Robert Baer, Edward Johnson, William Kolano, Edward Neafsey, State of New Jersey, Treasury Department ("Treasury"), and Union County Prosecutor's Office. (ECF Nos. 14, 33). Additionally, Defendants William McCue and David Derosa filed separate Motions for Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c) (collectively with the abovementioned motions to dismiss, "Defendants' Motions"). (ECF Nos. 46, 49). Plaintiff opposed Defendants' Motions, and all Defendants, except for Defendant DeRosa, replied thereto. (ECF Nos. 28, 45, 47, 51, 53). The Court decides this matter without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the following reasons, the Court grants Defendants' Motions in part, but denies the parts of Defendants' Motions seeking to dismiss Plaintiff's Mistaken Imprisonment Act claim against Defendant Treasury and negligent infliction of emotional distress claim against Defendant Union.

# I.  BACKGROUND[1]

On March 19, 1994, Plaintiff and his friend allegedly left New Jersey on a road trip to Florida in Plaintiff's Acura Legend.  (Compl. ¶ 34).  At approximately 11:34 p.m. that night, Plaintiff was supposedly pulled over and received a speeding ticket in South Carolina.  (Compl. ¶ 34).  According to Plaintiff, "[t]he ticket clearly stated the date, time and location of the traffic offense, and that [Plaintiff] was the driver and owner of the vehicle."  (Compl. ¶ 34).  At about 1:30 a.m. on March 20, 1994, Plaintiff and his friend checked into a motel in Georgia, where Plaintiff's friend filled out the motel registration card.  (Compl. ¶ 34).  On the morning of March 20, 1994, the pair continued to travel south until they reached Florida, where Plaintiff claims they stayed for approximately one week with Plaintiff's relatives.  (Compl. ¶ 36).  During his trip, Plaintiff made about seven calls to his girlfriend who lived in Elizabeth, New Jersey, including one on the afternoon of March 19, 1994 from a location in Virginia, one several hours later from a location in South Carolina, and five additional calls made over the next few days from a location in Florida.  (Compl. ¶ 36).  These calls were documented in Plaintiff's girlfriend's telephone bills.  (Compl. ¶ 36).

At approximately 3:00 a.m. on March 20, 1994, there was a shooting in Elizabeth, New Jersey, more than 790 miles away from the motel Plaintiff allegedly checked into less than two hours earlier.  (Compl. ¶¶ 35, 56).  As a result of the shooting, a man was killed, and another was injured.  (Compl. ¶ 35).  According to Plaintiff, Elizabeth Police Officer Thomas Koczur suspected that Plaintiff was involved in the crime, because his Haitian ethnicity matched a description of the shooter.  (Compl. ¶¶ 37; 40).  Plaintiff claims that Officer Koczur further suspected him because

---

[1] This background is derived from Plaintiff's Complaint, (ECF No. 1 at Ex. A ("Compl.")), which the Court must accept as true at this stage of the proceedings.  *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).  Though several individuals described below are defendants in this case, the Court refers to an individual as "Defendant" only if that party is involved in the current motions pending before the Court to avoid confusion.

Plaintiff drove a similar model car as one observed at the shooting. (Compl. ¶ 37). Based on these suspicions, Officer Koczur allegedly coerced Mr. Lamar McCall, a man charged in connection with the shooting, to make false statements regarding Plaintiff's location at the time of the shooting, thereby implicating Plaintiff and discrediting his alibi defense. (Compl. ¶¶ 37, 43). Plaintiff claims that Officer Koczur should have known that these statements were false because they "bore no relation to the events that had been reported by the numerous eyewitnesses immediately after the [shooting]." (Compl. ¶ 37). In exchange for this allegedly false information, Assistant Prosecutor Defendant Kolano arranged a plea agreement for Mr. McCall. (Compl. ¶ 43).

Assistant Prosecutor Defendant Baer then allegedly secured search warrants based on "unreliable and untrue evidence." (Compl. ¶ 37). Upon searching Plaintiff's car, the police allegedly found the speeding ticket he received in South Carolina and a receipt for a parking lot in Miami, Florida. (Compl. ¶¶ 65–66). Plaintiff also claims that he provided the police with permission to search his apartment, which he shared with his girlfriend. (Compl. ¶ 67). Plaintiff's girlfriend told the police that Plaintiff was on a trip to Florida at the time of the shooting, and allegedly provided them with her telephone bills which documented the calls Plaintiff made to her during his trip to Florida. (Compl. ¶¶ 67–68). Despite the evidence supposedly showing that Plaintiff was not in New Jersey at the time of the shooting, law enforcement officials proceeded to investigate and prosecute Plaintiff. (Compl. ¶ 69).

According to Plaintiff, Defendant Baer and Union County Prosecutor's Office Investigator John Furda secured an indictment against Plaintiff by presenting false or misleading statements to the Grand Jury to make it appear that Plaintiff was not traveling outside of New Jersey at the time of the shooting. (Compl. ¶ 42). Specifically, Defendant Baer and Investigator Furda allegedly misrepresented the height of the South Carolina State Trooper who pulled Plaintiff over and the

statement of the Georgia motel's employee to discredit Plaintiff's alibi. (Compl. ¶ 42). After he was indicted by the Grand Jury, Plaintiff was arrested on April 15, 1994 and charged with the above-mentioned murder. (Compl. ¶¶ 37, 42).

Assistant Prosecutor Ann Rubin prosecuted the case against Plaintiff at trial, and Plaintiff was represented by Thomas J. Butler, Esq., who was associated with the Law Office of David Conti. (Compl. ¶¶ 39, 97–98). More than 300 days after the shooting, Union County Prosecutor's Office Lieutenant Defendant Johnson approached two eyewitnesses in preparation for trial, who both selected Plaintiff as the shooter out of a photo array. (Compl. ¶ 40). In eliciting the selection of Plaintiff's photo, Defendant Johnson allegedly failed to follow procedures aimed at reducing the risk of misidentification, such as informing the eyewitnesses that the shooter may not be present in the photo array. (Compl. ¶ 40). Defendant Johnson also allegedly failed to realize that one of the witnesses' statements was inconsistent with the statement that witness made to the police at the time of the shooting. (Compl. ¶ 40). Specifically, Plaintiff claims the witness told Defendant Johnson that the shooter had a Haitian accent and that he would be able to identify the shooter, but that same witness told the police on the day of the crime that the shooter did not have an accent and that he would not be able to identify the shooter. (Compl. ¶ 40). Defendant Johnson would later testify that he was not aware that the witness made the earlier statement. (Compl. ¶ 40).

Throughout the trial, Assistant Prosecutor Rubin allegedly "pursued alternate theories and motives surrounding the murder, which were mutually exclusive." (Compl. ¶ 44). Assistant Prosecutor Rubin also presented a witness who testified that she saw Plaintiff in Elizabeth, New Jersey a few hours after the shooting. (Compl. ¶¶ 38–39). This witness was actually a police informant and was allegedly persuaded by Officer Koczur to offer false testimony in order to discredit Plaintiff's alibi defense. (Compl. ¶ 38). Plaintiff claims that it would have been evident

4

to a seasoned prosecutor such as Assistant Prosecutor Rubin that this witness was a police informant, because the witness's criminal record reflected that she had been arrested numerous times but was never convicted. (Compl. ¶ 39). Plaintiff further states that "[t]his police informant was also known to [Elizabeth Police Officers] Defendants Derosa and McCue, and these defendants did in fact work with this informant in the past, yet never disclosed this information to Plaintiff during the pendency of his criminal matter." (Compl. ¶ 38). As a result of the Defendants' alleged failure to disclose this information, Plaintiff was not aware that the witness was a police informant during the trial, which Plaintiff claims would have been pertinent evidence to show that the witness was biased. (Compl. ¶ 39).

At the conclusion of the trial, the jury found Plaintiff guilty of murder and other offenses related to the March 20, 1994 shooting, and he was eventually sentenced to a 60-year state prison term. (Compl. ¶¶ 44, 70). Plaintiff spent the next "22 years, 2 months, and 23 days" in prison. (Compl. ¶ 51). During his incarceration, Plaintiff engaged in "every avenue of legal recourse," and eventually had his petition heard by the New Jersey Supreme Court. (Compl. ¶ 44). On December 17, 2015, the New Jersey Supreme Court found that Mr. Butler "did not call important alibi witnesses and failed to present crucial evidence establishing [Plaintiff's] innocence," thereby denying Plaintiff effective assistance of counsel. (Compl. ¶¶ 44–45). The New Jersey Supreme Court accordingly reversed Plaintiff's conviction and granted him a new trial. (Compl. ¶ 71).

Plaintiff's second trial occurred in June 2016. (Compl. ¶ 45). At the second trial, the two eyewitnesses that Defendant Johnson previously approached "admitted that they had merely guessed when they selected [Plaintiff's photo from the] photo arrays." (Compl. ¶ 45). Additionally, after inquiring to the assistant prosecutor retrying the case, Plaintiff's new defense counsel confirmed that the witness presented by Assistant Prosecutor Rubin in the initial trial was

a police informant. (Compl. ¶ 39). On July 8, 2016, the state court granted Plaintiff's motion for a judgment of acquittal after the prosecution conceded that there were no other witnesses that could place Plaintiff at the scene of the crime. (Compl. ¶ 75).

Plaintiff alleges that he was wrongfully incarcerated for over 22 years because the individual defendants discussed above: (1) manufactured misleading and false evidence; (2) knew that one of their witnesses was a police informant and failed to disclose same in violation of the constitutional principles established in *Brady v. Maryland*, 373 U.S. 83, 87 (1963); and (3) engaged in a custom or practice of permitting and facilitating unlawful arrest and prosecutions "in this instance, and in other instances." (Compl ¶¶ 41, 46, 83–84).

Accordingly, Plaintiff brought this action to recover compensatory damages, alleging a claim against Defendant Treasury pursuant to the Mistaken Imprisonment Act, N.J.S.A. 52:4C-1 *et seq.* ("Count I"), and a claim against Mr. Butler and others who represented Plaintiff during his initial trial for Professional Negligence/Breach of Responsibility (which is listed as Count II). (Compl. ¶¶ 49–132). Plaintiff also alleges the following causes of action against the remaining Defendants: Violation of the New Jersey Civil Rights Act ("NJCRA") and New Jersey Constitution ("Count III"); Violation of 42 U.S.C. § 1983 ("Count IV"); Conspiracy in Violation of 42 U.S.C. § 1985 ("Count V"); Unlawful Policy, Practice, or Supervision under *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978) ("Count VI"); Common Law Intentional Infliction of Emotional Distress ("Count VII"); Common Law Negligent Infliction of Emotional Distress ("Count VIII"); Common Law Malicious Prosecution ("Count IX"); and Common Law Abuse of Process ("Count X"). (Compl. ¶¶ 133–75).

## II.    LEGAL STADARD

### A. Failure to State a Claim

To withstand a motion to dismiss for failure to state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the Court must take three steps. "First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations and citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### B. Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c); *see also Liberty Int'l Underwriters Canada*

*v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 323 (D.N.J. 2013) ("The pleadings are considered to be 'closed' after the complaint and answer have been filed, along with any reply to additional claims asserted in the answer.") (citation omitted). When a party makes a motion for judgment on the pleadings based on the defense of failure to state a claim, similar to Defendants McCue and Derosa in this case, (*see generally* ECF Nos. 46, 49), the Court "appl[ies] the same standards as under Rule 12(b)(6)." *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991); *see also Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 146 (3d Cir. 2013) (stating same).

### III.  ANALYSIS

For judicial efficiency and clarity, the Court shall group the Defendants based on their similar arguments. The Court shall first discuss the claims against Defendant Treasury, and then the claims against Defendant Union.  The Court will then address the claims against the "Prosecutor Defendants," which includes Defendants Union County Prosecutor's Office, Neafsey in his official capacity as the Union County Prosecutor, Baer, Kolano, and Johnson.[2]  Finally, the Court will discuss the "Police Defendants," which incorporates Defendants McCue and Derosa. As discussed further below, the Court shall dismiss all of Plaintiff's claims against these Defendants, with the exception of Count I against Defendant Treasury and Count VIII against Defendant Union.

#### A. Defendant Treasury

Count I of Plaintiff's Complaint is brought solely against Defendant Treasury. (*See* Compl. ¶¶ 49–87).  Furthermore, Plaintiff does not assert any other claims against Defendant Treasury.

---

[2] Plaintiff does not assert that Defendant Neafsey was personally involved in any of the allegations in the Complaint, and therefore the Court finds that there are no claims against Defendant Neafsey in his individual capacity for the Court to analyze.

(*See generally* Compl.).   To state a claim under the Mistaken Imprisonment Act, Plaintiff must allege:

> That he was convicted of a crime and subsequently sentenced to a term of imprisonment, served all or any part of his sentence; and
>
> He did not commit the crime for which he was convicted; and
>
> He did not commit or suborn perjury, fabricate evidence, or by his own conduct cause or bring about his conviction. Neither a confession or admission later found to be false shall constitute committing or suborning perjury, fabricating evidence, or causing or bringing about his conviction under this subsection; and
>
> He did not plead guilty to the crime for which he was convicted.

N.J.S.A. 52:4C-3 (paragraph numbering omitted).

Here, Plaintiff alleges that he: (i) was convicted for a murder that he did not commit, (ii) was imprisoned for over 22 years prior to being retried and acquitted, and (iii) did not plead guilty. (*See generally* Compl.).   As for the third element, there is no allegation that Plaintiff committed perjury.   Plaintiff also alleges that there was substantial evidence showing that he was innocent, including but not limited to the ticket he received in South Carolina and the telephone bills documenting his out of state calls to his girlfriend.   (Compl. ¶¶ 68–69).   When accepting these allegations as true at this early stage of the litigation, the Court concludes that Plaintiff has sufficiently met the elements necessary for a *prima facie* claim under the Mistaken Imprisonment Act.   Defendants do not seem to challenge this conclusion, as Defendants' Motions do not include a single argument regarding Count I or Defendant Treasury. (*See generally* ECF No. 14 (motion naming Defendant Treasury as a movant)).   Accordingly, the Court finds that Count I against Defendant Treasury may proceed, and the parts of Defendants' Motions seeking to dismiss same are denied.

## B. Defendant Union

1. Federal Claims

Pursuant to § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Accordingly, to state a claim for relief under § 1983, a plaintiff must allege two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255–56 (3d Cir. 1994).

It has long been established that the principle of *respondeat superior* cannot be used to hold a municipal or local government liable under § 1983. *Monell*, 436 U.S. at 694. Specifically, the Supreme Court has stated that:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.*

The Supreme Court has stated that *Monell* liability only attaches "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. Cincinnati*, 475 U.S. 469, 482 (1986). As an alternative to showing an unlawful or improper policy, *Monell* liability also applies to a defendant's custom of improper conduct "where

the relevant practice is so permanent and 'widespread as to have the force of law.'" *Hernandez v. Borough of Palisades Park Police Dep't*, 58 F. App'x 909, 912 (3d Cir. 2003) (citing *Bryan Cty. Comm'r v. Brown*, 520 U.S. 397, 404 (1997)); *see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 2007) (analyzing same).

As an initial matter, Counts IV and V are brought against Defendant Union for the individual conduct of its agents,[3] (*see* Compl. ¶¶ 135–45), and same must be dismissed pursuant to the principles of *Monell*, 436 U.S. at 694. For Count VI , which specifically asserts a *Monell* claim, Plaintiff has sufficiently alleged that Defendant Union is vested with supervisory and policy making authority over the officers of the Elizabeth Police Department, and that its failure to train, supervise, and discipline its subordinates resulted in a pattern or practice that condones the kind of allegedly improper conduct which occurred in this case. (Compl. ¶¶ 148–52). Nevertheless, the Court finds that Plaintiff's allegations are insufficient to state a *Monell* claim, as Plaintiff does not direct the Court to a particular policy of Defendant Union or any other policymaker condoning this allegedly improper conduct. (*See* Compl. ¶¶ 146–58). Furthermore, Plaintiff's speculative allegation that there were "other instances" of similar violations, (Compl. ¶ 46), is not sufficient to show that Defendant Union was aware of the kind of systemic violation required for a *Monell* claim. *See Bielevicz*, 915 F.2d at 851 (explaining that *Monell* liability attaches when "policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury."). Therefore, the Court finds that Counts IV, V, and VI against Defendant Union must be dismissed.

---

[3] While the Court finds it appropriate based on Plaintiff's allegations to assume at this early stage of the litigation that at least some of the Elizabeth Police Officers named as defendants were acting as agents of Defendant Union, the Court notes that the Prosecutor Defendants were acting as an arm of the State, as explained below, *infra* III.C.1, and were not agents of Defendant Union. *See Halsey v. Pfeiffer*, Civil Action No. 09-1138, 2010 WL 1611379, at *2 (D.N.J. April 20, 2010) (reasoning that the County of Union has a "potentially" significant degree of control or responsibility over local detectives and police officers, but it "may" not supervise the prosecutor's office).

2. NJCRA Claim

   In addition to bringing claims under § 1983, Plaintiff also asserts Count III against Defendant Union pursuant to the NJCRA. A person may bring a civil action under the NJCRA in two circumstances: "(1) when he's deprived of a right, or (2) when his rights are interfered with by threats, intimidation, coercion, or force." *Felicioni v. Admin. Office of Courts*, 404 N.J. Super. 382, 400 (App. Div. 2008) (emphasis omitted). The NJCRA was modeled after § 1983, and thus courts in New Jersey have generally looked at claims under the NJCRA "through the lens of § 1983." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443–44 (D.N.J. 2011); *see also Chapman v. N.J.*, Civil Action No. 08-4130, 2009 U.S. Dist. LEXIS 75720, at *7 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983."); *Armstrong v. Sherman*, Civil Action No. 09-716, 2010 U.S. Dist. LEXIS 55616, at *15 (D.N.J. June 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983."); *Endl v. N.J.*, 5 F. Supp. 3d 689, 697 (D.N.J. 2014) ("In particular, the definitions of 'person' under the two statutes have been interpreted in parallel.") (citing *Didiano v. Balicki*, 488 F. App'x 634, 638 (3d Cir. 2012)). Consistent with these principles, the Court finds that its above analysis that a local government cannot be held liable for the individual conduct of its subordinates, *supra* III.B.1, applies to Plaintiff's NJCRA claim. Because Count III alleges a claim against Defendant Union based on the individual conduct of its supposed agents, similar to Counts IV and V, said Count against Defendant Union must be dismissed.

3. Tort Claims

   a. *Intentional Torts*

   Plaintiff also asserts the remaining common law claims against Defendant Union, including but not limited to intentional infliction of emotional distress (Count VII), malicious prosecution

(Count IX), and abuse of process (Count X). (*See generally* Compl.). However, a public entity may not be held liable for intentional torts allegedly committed by its employees. *See Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 767 (D.N.J. 2016); *Soto v. City of Newark*, 72 F. Supp. 2d 489, 497 (D.N.J. 1999) (holding that a public entity may not be held liable for intentional torts of a public employee) (citing *McDonough v. Jorda*, 214 N.J. Super. 338, 350 (App. Div. 1986)). Because Defendant Union is a public entity, and Counts VII, IX, and X against Defendant Union are intentional torts, same must be dismissed.

*b. Negligence*

Finally, the Court finds that Count VIII against Defendant Union can survive at this stage of the proceedings. In New Jersey, the direct tort of negligent infliction of emotional distress is "understood as negligent conduct that is the proximate cause of emotional distress in a person to whom the actor owes a legal duty to exercise reasonable care." *Decker v. Princeton Packet, Inc.*, 116 N.J. 418, 429 (1989). The following elements are required for Plaintiff to show a *prima facie* claim of negligent infliction of emotional distress: (1) the defendant had "a duty of reasonable care" to the plaintiff; (2) the defendant breached said duty; (3) the "plaintiff suffered severe emotional distress"; and (4) the breach proximately caused the plaintiff's injury. *See Dello Russo v. Nagel*, 358 N.J. Super. 254, 269 (App. Div. 2003).

Here, Plaintiff has alleged that: (1) the Defendants in this case owed a duty not to violate Plaintiff's rights; (2) members of the Elizabeth Police Department, who were allegedly agents of Defendant Union, along with various prosecutors, including the Prosecutor Defendants, performed their investigation and prosecution in a way that may have constituted negligence; and (3) this allegedly improper investigation directly and proximately caused Plaintiff to be incarcerated for over 22 years and suffer severe mental anguish until this day. (Compl. ¶¶ 163–64). When

accepting these allegations as true at this early stage of the litigation, Plaintiff has sufficiently pled the elements necessary for a *prima facie* claim of negligent infliction of emotional distress. Therefore, Count VIII shall not be dismissed against Defendant Union.

## C. Prosecutor Defendants

1. Official Capacity § 1983 and NJCRA Claims

In suits against a defendant in his or her official capacity, the only immunities that are available "are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment." *Ky. v. Graham*, 473 U.S. 159, 167 (1985) (analyzing suit brought under § 1983); *see also Brown v. State*, 442 N.J. Super. 406, 426 (App. Div. 2015) ("Given that the Legislature did not choose to include an express waiver of sovereign immunity in the Civil Rights Act and that the State enjoys immunity under the analogous § 1983, we conclude that the State is immune from a suit for damages under the Civil Rights Act."), *rev'd on other grounds,* 230 N.J. 84, 90 (2017). The well-recognized doctrine of sovereign immunity, embodied in the Eleventh Amendment to the United States Constitution, provides that the States are immune from suit in federal court. *See, e.g., Alden v. Maine*, 527 U.S. 706, 712–13 (1999); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989). Sovereign immunity is not limited to the State itself, but rather extends to state agencies and state officers who act on behalf of the State. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).

Pursuant to the law in this Circuit, "[w]hen county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State." *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996), *abrogated on other grounds*, *Nance v. City of Newark*, 501 F. App'x 123, 129 n.7 (3d Cir. 2012); *see also Banda v. Burlington Cty.*, Civil Action No. 03-2045, 2006 WL 2739718, at *4 (D.N.J. 2006) (explaining that "several courts [in this District] have held

that New Jersey county prosecutors' offices are entitled to Eleventh Amendment immunity from suits arising out of the exercise of prosecutorial powers"). Alternatively, when a county prosecutor is engaged in administrative functions "unrelated to the duties involved in criminal prosecution," such as the promotion of employees, said prosecutor is acting as a local or county official and is not entitled to sovereign immunity. *Coleman*, 87 F.3d at 1506.

In the current case, the Court finds that the alleged conduct of the Prosecutor Defendants, which includes among other things seeking an indictment and presenting witnesses at trial, clearly relates to "classic law enforcement and investigative functions." *See, e.g., Woodyard v. Cty. of Essex*, 514 F. App'x 177, 182 (3d Cir. 2013) (holding that defendant was entitled to sovereign immunity against claims that it arrested, detained and prosecuted plaintiff without probable cause). Though Plaintiff argues that the Prosecutor Defendants were acting in "administrative and investigative roles," he does not support his argument with any case law related to sovereign immunity. (*See* ECF No. 28 at 21). Instead, Plaintiff's arguments pertain to absolute prosecutorial immunity and are rejected for the reasons expressed below, *infra* III.C.2.a. Because the Court finds it clear that the Prosecutor Defendants were acting as agents of the State, they are entitled to sovereign immunity, and therefore Counts III, IV, V, and VI against them in their official capacities must be dismissed.

2. Individual Capacity § 1983 and NJCRA Claims

  a. *Absolute Prosecutorial Immunity*

It is well settled that "a state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). The Supreme Court held that a prosecutor is absolutely immune for actions that are "intimately associated with the judicial phase of the criminal process" while

functioning as an advocate for the State. *Id.* at 430–31; *see also Moore v. Middlesex Cty. Prosecutor's Office*, 503 F. App'x 108, 109 (3d Cir. 2012) ("Although a prosecutor's deliberate destruction of exculpatory evidence is not entitled to absolute immunity, the decision to withhold such evidence from the defense while functioning as an advocate for the State is protected by absolute immunity."). Since *Imbler*, the Supreme Court has held that "absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search warrant application." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (citations omitted). On the other hand, a prosecutor's actions that are taken in an investigative or administrative capacity may be protected by qualified immunity only. *See Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992); *see also Yarris v. Cty. of Del.*, 465 F.3d 129, 138 (3d Cir. 2006) (reasoning that the handling of a request for scientific test on evidence made after conviction may "be best described as part of the prosecutor's administrative duties.") (quotations and citations omitted).

Here, the Prosecutor Defendants allegedly: (i) used unreliable or false evidence and testimony to secure an indictment from the grand jury; (ii) secured search warrants based on misleading information; (iii) improperly elicited a photo identification of Plaintiff from two eyewitnesses in preparation for trial; and (iv) failed to disclose that one of the government's witnesses at trial was a police informant. (*See generally* Compl.). Contrary to Plaintiff's argument, (ECF No. 28 at 34–37), this alleged conduct was not investigative, but fell within "the core of the prosecutorial function." *Munchinski v. Solomon*, 618 F. App'x 150, 154 (3d Cir. 2015) (holding that a prosecutor was entitled to absolute immunity from the plaintiff's claim that the prosecutor ignored inconsistent evidence in determining whether there was probable cause for his arrest); *see also Ray v. N.J.*, 219 F. App'x 121, 124 (3d Cir. 2007) (explaining that prosecutorial

immunity also extends to decisions to seek an indictment and to preparations for a grand jury) (citations omitted). To the extent that the Prosecutor Defendants' alleged conduct was performed out of court, said conduct was nevertheless in preparation for the criminal proceedings against Plaintiff. *See Burns v. Reed*, 500 U.S. 478, 485 (1991) ("the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.") (quoting *Imbler*, 424 U.S. at 431 n.33); *see also Jerrytone v. Musto*, 167 F. App'x 295, 300 (3d Cir. 2006) ("[p]rosecutors enjoy absolute immunity . . . for evaluation of evidence collected by investigators, and for failure to conduct [an] adequate investigation before filing charges.") (internal citations omitted). Therefore, the Prosecutor Defendants are entitled to absolute prosecutorial immunity, and Counts III, IV, V, and VI against them in their individual capacities must be dismissed.

### b. *Qualified Immunity*

Although the Court finds that absolute prosecutorial immunity applies to the Prosecutor Defendants, it will also address the alternative possibility that the Prosecutor Defendants are protected by qualified immunity. *See Yarris*, 465 F.3d at 140 (noting that when a district court determines whether a prosecutor is immune from a civil rights claim, it would be helpful for the purposes of a potential appeal if that district court were to address both absolute and qualified immunity in the first instance). In determining whether the Prosecutor Defendants are entitled to qualified immunity, the Court "must ask whether the conduct alleged by the plaintiff violated a clearly established principle of constitutional or statutory law[, and] [i]f so, . . . whether the unlawfulness of the action would have been apparent to an objectively reasonable official." *Walter v. Pike Cty., Pa.*, 544 F.3d 182, 191 (3d Cir. 2008) (internal quotations and citation omitted).

The Court finds that even if the Prosecutor Defendants were not absolutely immune from liability in this case, they would still be entitled to qualified immunity. As discussed throughout this Opinion, Plaintiff alleges that the Prosecutor Defendants' presentation of misleading evidence and failure to disclose that one of their witnesses was a police informant violated his Fourth, Fifth, Sixth, Eight, and Fourteenth Amendment rights. (Compl. ¶¶ 135–143). However, Plaintiff's Complaint does not allege that the Prosecutor Defendants intentionally elicited evidence they knew to be false or that they acted "in bad faith or with an improper motive." *Bowser v. Borough of Freehold*, 99 F. App'x 401, 404 (3d Cir. 2004). Rather, Plaintiff alleges that the Prosecutor Defendants *should* have known that one of their witnesses was a police informant, and *should* have known that the identification of Plaintiff by an eyewitness contradicted that same witness's earlier statements. (Compl. ¶¶ 38, 40–41). These allegations, without more, are not sufficient to show the violation of a "clearly established constitutional right." *Mierzwa v. City of Garfield*, 170 F. App'x 212, 215 (3d Cir. 2005) (affirming the district court's conclusion that a prosecutor was entitled to qualified immunity from the plaintiff's claim that the prosecutor mishandled the investigation underlying the criminal charges that were brought against the plaintiff); *see also Wilson v. Russo*, 212 F.3d 781, 789 n.5 (3d Cir. 2000) (stating that an unsatisfactory or even negligent investigation does not deny a defendant entitlement to qualified immunity). Accordingly, the Prosecutor Defendants are entitled to qualified immunity.

3. Tort Claims Against the Prosecutor Defendants

To the extent that any of Plaintiff's common law causes of action are not dismissed based on the above analysis, the Court nevertheless finds that Plaintiff cannot state a claim for same against the Prosecutor Defendants for the reasons expressed below.

*a. Intentional Torts*

The Court finds that Plaintiff has failed to establish that the Prosecutor Defendants acted with the intent required under New Jersey law to support the allegations set forth in Counts VII, IX, and X. First, a plaintiff can establish a *prima facie* claim for intentional infliction of emotional distress by showing: "(1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe." *Witherspoon v. Rent–A–Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (citing *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366 (1988)). Second, a claim of malicious prosecution requires: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty . . . ." *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)). Finally, a claim of abuse of process under New Jersey law requires that the defendants initiated process with an ulterior motive and took some further act "representing the perversion of the legitimate use of the process." *Simone v. Golden Nugget Hotel & Casino*, 844 F.2d 1031, 1036–37 (3d Cir. 1988) (citations omitted).

As previously discussed in regard to the Prosecutor Defendants' entitlement to qualified immunity, *supra* III.C.2.b, Plaintiff has not set forth any facts showing that the Prosecutor Defendants *intentionally* withheld information or elicited evidence that they knew to be false. While the alleged conduct of the Prosecutor Defendants may at most satisfy a negligence standard, these allegations are not sufficient to show that the Prosecutor Defendants acted maliciously or with an ulterior motive. *See, e.g., LoBiondo v. Schwartz*, 199 N.J. 62, 93–94 (2009) ("Malice . . .

is defined as the intentional doing of a wrongful act without just cause or excuse.") (quotations and citations omitted); *see also Fregara v. Jet Aviation Bus. Jets,* 764 F. Supp. 940, 956 (D.N.J. 1991) (stating that a plaintiff cannot establish intentional infliction of emotional distress by merely alleging that the defendants acted "unjust, unfair and unkind."). Rather, the Complaint shows that the only purpose the Prosecutor Defendants had in charging Plaintiff was to prosecute him for the March 20, 1994 murder.[4] Accordingly, Plaintiff cannot establish a claim of intentional infliction of emotional distress, malicious prosecution, or abuse of process against the Prosecutor Defendants, and said claims must be dismissed.

### b. *Negligence*

Though Plaintiff can state a claim for negligent infliction of emotional distress as previously discussed, *supra* III.B.3.b, said claim against the Prosecutor Defendants is nevertheless barred by prosecutorial immunity. The New Jersey Tort Claims Act provides for prosecutorial immunity and specifically states that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment." N.J.S.A. 59:3-8. This provision is qualified to the extent that "this act shall [not] exonerate a public employee from liability if it is established that his conduct was outside of the scope of his employment or constituted a crime, actual malice or willful misconduct." N.J.S.A. 59:3-14(a). As already discussed above, *supra* III.C.3.a, the Court found that Plaintiff failed to allege that the Prosecutor Defendants were acting with malice or outside the scope of their employment. Moreover, the New Jersey Tort Claims Act's limitation of prosecutorial immunity does not appear to incorporate a claim for negligent infliction of emotional distress, as said claim requires a

---

[4] Because Plaintiff fails to establish a required element for each of these causes of action, the Court finds it unnecessary to analyze the other elements of same.

showing of *negligence*, not malice.[5]  *See Decker*, 116 N.J. at 429.  Accordingly, the Court finds that Count VIII against the Prosecutor Defendants is barred by prosecutorial immunity and must be dismissed.

**D. Police Defendants**

1. Failure to State a Claim

Despite accepting Plaintiff's Complaint as true, there are not sufficient factual allegations to show that the Police Defendants violated a constitutional right or possessed the intent or duty of care necessary to establish any of Plaintiff's claims.  The only allegation Plaintiff makes against the Police Defendants is that they did not disclose to Plaintiff that one of the witnesses at trial was a police informant despite being aware of said fact.  (Compl. ¶ 38).  While Plaintiff alleges that the Police Defendants worked with the police informant "*in the past*," (Compl. ¶ 38 (emphasis added)), there are no allegations that the Police Defendants interacted with said informant in this case.  Moreover, Plaintiff does not allege that the Police Defendants were in any way involved in, or even aware of, the investigation, arrest, or prosecution of Plaintiff.  (*See generally* Compl.).  The fact that the Police Defendants knew the identity of the police informant, without more, is not sufficient for this Court to find that the Police Defendants had a responsibility to disclose said information to Plaintiff, or that their failure to do so violated Plaintiff's constitutional rights.  *See Mattis v. Vaughn*, 128 F. Supp. 2d 249, 266 n.15 (E.D. Pa. 2001) (explaining that a police officer's knowledge of potentially exculpatory information that was relevant to a murder trial did not give rise to a *Brady* obligation when the officer was not involved or "acting on the government's behalf" in said murder trial) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)); *Seidel v. Greenberg*,

---

[5] Because the Prosecutor Defendants were not acting as agents of Defendant Union, this analysis of prosecutorial immunity does not apply to Defendant Union.  Though the Court agrees with Defendant Union that it cannot be held liable for the conduct of the Prosecutor Defendants, (*see generally* ECF No. 33), that analysis does not apply to the various police officers implicated in this case.

108 N.J. Super. 248, 257 (Law Div. 1969) ("In order to sustain the action [for malicious prosecution], it must affirmatively appear . . . that the party sought to be charged was the proximate and efficient cause of maliciously putting the law in motion.") (citation omitted). Because the Police Defendants were not involved in the investigation or prosecution of Plaintiff, nor were they required to disclose information to Plaintiff, the Court finds that Plaintiff cannot assert a claim against them. Accordingly, all claims against the Police Defendants must be dismissed.

2. Qualified Immunity

The Court finds that Plaintiff's civil rights claims could also be dismissed on the alternative grounds of qualified immunity. As stated above, a law enforcement defendant is entitled to qualified immunity when "the conduct alleged by the plaintiff violated a clearly established principle of constitutional or statutory law," and the violation of said right "would have been apparent to an objectively reasonable official." *Walter*, 544 F.3d at 191 (citations omitted). Here, there is nothing in the record or law cited by Plaintiff, (*see generally* ECF No. 51), that would lead the Court to conclude that a police officer who was not involved in the underlying case and failed to disclose information violated a "clearly established right." Furthermore, the Court finds that it would be contradictory to conclude that the allegations against Police Defendants gave rise to a violation of a "clearly established right" that a reasonable officer would be aware of, when, as discussed above, *supra* III.D.1, said allegations are not even sufficient to show a constitutional violation in the first place. Accordingly, the Court finds that the Police Defendants are entitled to qualified immunity, and Counts III, IV, V, and VI are barred by same.

## IV.    CONCLUSION

For the abovementioned reasons, the Court hereby grants in part the Defendants' Motions, with the exception that the Court hereby denies the parts of Defendants' Motions seeking to dismiss Count I against Defendant Treasury and Count VIII against Defendant Union.    An appropriate Order follows this Opinion.


Dated: November _____5th_____, 2018.

_____
**JOSE L. LINARES**
Chief Judge, United States District Court