**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DUQUENE PIERRE, | Civil Action No.: 18-3443 (JLL) |
| Plaintiff, | **OPINION** |
| v. | |
| STATE OF NEW JERSEY, TREASURY DEPARTMENT, *et al.*, | |
| Defendants. | |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of the Motions for Judgment on the Pleadings filed by Defendants John Luby, City of Elizabeth ("Elizabeth"), Elizabeth Police Department ("Elizabeth PD"), Thomas Koczur, and County of Union ("Union"), pursuant to Federal Rule of Civil Procedure 12(c), and the Motion to Dismiss Plaintiff Duquene Pierre's Complaint filed by Defendants John Furda and Ann Rubin, pursuant to Federal Rule of Civil Procedure 12(b)(6) (collectively, "Defendants' Motions"). (ECF Nos. 88, 89, 90, 91). Plaintiff opposed Defendants' Motions, and Defendants replied thereto. (ECF Nos. 95, 96, 97, 98, 99, 100, 101, 102, 103). The Court decides this matter without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the following reasons, the Court grants Defendants' Motions in part, but denies the part of Defendants' Motions seeking to dismiss certain claims against Defendant Koczur.

# I.    BACKGROUND[1]

The Court shall only reiterate the facts to the extent necessary to determine Defendants'
Motions, as the Court has already discussed the surrounding circumstances and procedural history
in detail, (*see* ECF No. 66 at 2–6), and writes for the parties who are familiar with the background
of this case. To summarize, Plaintiff alleges that he was arrested in March 1994 and convicted in
1996 after a jury trial in state court for a murder in New Jersey that he allegedly did not commit.
(Compl. ¶¶ 14, 127). Plaintiff alleges, among other things, that there was exculpatory evidence
that was overlooked by the police and prosecutors, including a South Carolina traffic ticket, a
Georgia motel receipt, and several phone calls from Florida that indicated that Plaintiff was not in
New Jersey at the time of the homicide. (*See* Compl. ¶¶ 34–37). As a result of the murder
conviction, Plaintiff spent over twenty-two years in prison, until the New Jersey Supreme Court
granted him a retrial on December 17, 2015 and, on July 8, 2016, the second trial court granted
Plaintiff's motion for a judgment of acquittal based on a lack of evidence. (Compl. ¶¶ 44–45, 51,
70–71).

Plaintiff alleges the following allegations in relation to each of the individual Defendants
presently moving before the Court:

- *Defendant Koczur* – An officer for Defendant Elizabeth PD who investigated the
  abovementioned homicide and allegedly first suspected Plaintiff because of his Haitian
  ethnicity and the fact that he drove a similar model car as one observed at the shooting.
  (Compl. ¶¶ 37, 40). Plaintiff alleges that Defendant Koczur intentionally and
  knowingly coerced a suspect, Lamar McCall, to make false statements implicating

---

[1] This background is derived from Plaintiff's Complaint, (ECF No. 1 at Ex. A ("Compl.")), which the Court must
accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir.
2009).

Plaintiff. (Compl. ¶ 37). Later on, during Plaintiff's first murder trial, Defendant Koczur allegedly coerced Allison Johnson, a confidential informant who was not present at the time of the homicide, to provide false testimony to the Court that she saw Plaintiff at the scene of the homicide. (Compl. ¶¶ 38–39). Defendant Koczur allegedly did not disclose that Johnson was a confidential informant, and Plaintiff was therefore unaware of said fact until in or around June 2016, when Plaintiff's attorney for the second murder trial made an inquiry to an assistant prosecutor and the assistant prosecutor discovered that Johnson was in fact a confidential informant. (Compl. ¶¶ 39, 41, 72).

- *Defendant Luby* – An officer for Defendant Elizabeth PD who, along with Defendant Furda, allegedly took statements from McCall "which they knew or should have known were false and damaging to the Plaintiff's alibi." (Compl. ¶ 43). Plaintiff also alleges that Defendant Luby conducted an interview with two witnesses simultaneously, which Plaintiff claims was improper. (Compl. ¶ 43). Plaintiff further states that said interview was relied upon in Plaintiff's allegedly unlawful arrest and prosecution. (Compl. ¶ 43).

- *Defendant Furda* – A Union County Prosecutor's Office investigator who, along with Defendant Luby, allegedly took statements from McCall "which they knew or should have known were false and damaging to the Plaintiff's alibi." (Compl. ¶ 43). Defendant Furda also allegedly presented false or misleading statements to the Grand Jury to make it appear that Plaintiff was not traveling outside of New Jersey at the time of the homicide. (Compl. ¶ 42). Specifically, Plaintiff alleges that Defendant Furda discredited Plaintiff's alibi by misrepresenting the height of the South Carolina State

Trooper who pulled Plaintiff over and the statements of the Georgia motel's employee. (Compl. ¶ 42).

- *Defendant Rubin* – The assistant prosecutor with the Union County Prosecutor's Office who represented the state in Plaintiff's first murder trial and allegedly "pursued alternate theories and motives surrounding the murder, which were mutually exclusive." (Compl. ¶ 44). Defendant Rubin also presented Johnson as a witness, who testified that she saw Plaintiff in Elizabeth, New Jersey a few hours after the homicide. (Compl. ¶¶ 38–39). Plaintiff claims that it would have been evident to a seasoned prosecutor such as Defendant Rubin that Johnson was a confidential informant, because Johnson's criminal record reflected that she had been arrested numerous times but was never convicted. (Compl. ¶ 39).

Plaintiff also broadly alleges that all of the Defendants listed above "knew or should have known" that Johnson was a confidential informant and did not disclose same in violation of the constitutional principles established in *Brady v. Maryland*, 373 U.S. 83, 87 (1963). (Compl. ¶ 41). Plaintiff further states that the actions of the abovementioned Defendants "represent a conspiracy to deny and violate the civil rights of Plaintiff." (Compl. ¶ 145). Finally, Plaintiff claims that Defendants engaged in a custom or practice of permitting and facilitating unlawful arrest and prosecutions "in this instance, and in other instances," and that the failure of, among others, the institutional Defendants currently moving before this Court—*i.e.*, Defendants Elizabeth, Elizabeth PD, and Union—to train, supervise, and discipline their subordinates resulted in a pattern or practice of condoning this allegedly improper conduct. (Compl. ¶¶ 46, 148–52).

Accordingly, Plaintiff filed a notice of claim on October 3, 2016, and filed suit on January 22, 2018 in New Jersey Superior Court, Union County, which was subsequently removed to this

4

Court. (ECF No. 1; *see also* ECF No. 89-3 at 14 (stating the uncontested date of Plaintiff's notice of claim filing)). In his Complaint, Plaintiff asserts a claim against the New Jersey Treasury Department pursuant to the Mistaken Imprisonment Act, N.J.S.A. 52:4C-1 *et seq.* (which is listed as Count I), and a claim against the attorneys who represented him during his initial trial for Professional Negligence/Breach of Responsibility (which is listed as Count II). (Compl. ¶¶ 49–132). Plaintiff then asserts the following causes of action against all remaining defendants including but not limited to the abovementioned Defendants: (1) Violation of the New Jersey Civil Rights Act ("the NJCRA") and New Jersey Constitution ("Count III"); (2) Violation of 42 U.S.C. § 1983 ("Count IV"); (3) Conspiracy in Violation of 42 U.S.C. § 1985 ("Count V"); (4) Unlawful Policy, Practice, or Supervision under *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978) ("Count VI"); (5) Common Law Intentional Infliction of Emotional Distress ("IIED") ("Count VII"); (6) Common Law Negligent Infliction of Emotional Distress ("NIED") ("Count VIII"); (7) Common Law Malicious Prosecution ("Count IX"); and (8) Common Law Abuse of Process ("Count X"). (Compl. ¶¶ 133–75)

On November 5, 2018, this Court issued an Opinion and Order granting in part the motions to dismiss filed by several defendants ("the Court's prior Opinion"). (ECF Nos. 66, 67). Defendant Union was one of the defendants who originally moved for dismissal, and the Court specifically found that all of Plaintiff's claims must be dismissed against it with the exception of Count VIII, because Plaintiff had sufficiently established a *prima facie* claim for NIED against Defendant Union. (ECF No. 66 at 10–14). As for the police and prosecutor defendants who previously moved for dismissal, the Court found that Plaintiff had failed to state a claim against them and that they were also entitled to various forms of immunity. (*Id.* at 14–22). Now,

Defendants move for dismissal arguing in part that the logic from the Court's prior Opinion applies to them as well.

## II.   LEGAL STADARD

### A. Failure to State a Claim

To withstand a motion to dismiss for failure to state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the Court must take three steps: (1) "it must tak[e] note of the elements [the] plaintiff must plead to state a claim"; (2) "it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## B. Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c); *see also Liberty Int'l Underwriters Can. v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 323 (D.N.J. 2013) ("The pleadings are considered to be 'closed' after the complaint and answer have been filed, along with any reply to additional claims asserted in the answer.") (citation omitted). When a party makes a motion for judgment on the pleadings based on the defense of failure to state a claim, such as Defendants Luby, Elizabeth, Elizabeth PD, Koczur, and Union in this case, (*see* ECF Nos. 88, 89, 91), the Court "appl[ies] the same standards as under Rule 12(b)(6)." *See Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991); *see also Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 146 (3d Cir. 2013) (stating same).

## III.  DISCUSSION

### A. Defendant Koczur

1. ### § 1983 & the NJCRA

    a.  *Failure to State a Claim*

Pursuant to § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Accordingly, to state a claim for relief under § 1983, a plaintiff must allege two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or

laws of the United States, and (2) the deprivation was done under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pa.*, 36 F.3d 1250, 1255–56 (3d Cir. 1994).

In addition to bringing claims under § 1983, Plaintiff also asserts Count III against Defendant Koczur pursuant to the NJCRA. A person may bring a civil action under the NJCRA in two circumstances: "(1) when he's deprived of a right, or (2) when his rights are interfered with by threats, intimidation, coercion, or force." *Felicioni v. Admin. Office of Courts*, 404 N.J. Super. 382, 400 (App. Div. 2008) (emphasis omitted). The NJCRA was modeled after § 1983, and thus courts in New Jersey have generally looked at claims under the NJCRA "through the lens of § 1983." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443–44 (D.N.J. 2011); *see also Chapman v. N.J.*, No. 08-4130, 2009 U.S. Dist. LEXIS 75720, at *7 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983."); *Armstrong v. Sherman*, No. 09-716, 2010 U.S. Dist. LEXIS 55616, at *15 (D.N.J. June 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983."). Therefore, the Court shall analyze Counts III, IV, and VI under the same framework.

Here, Plaintiff alleges that Defendant Koczur, as a police officer with Defendant Elizabeth PD, coerced two witnesses (McCall and Johnson) to offer testimony that Defendant Koczur knew was false in order to implicate Plaintiff in the homicide, and that Defendant Koczur did not disclose this information. (Compl. ¶¶ 37–39, 41). Plaintiff further alleges that Defendant Koczur's conduct violated Plaintiff's Fourth, Fifth, Sixth, Eight, and Fourteenth Amendment rights, including but not limited to Plaintiff's right against unlawful arrest under the Fourth Amendment, right to confront witnesses against him under the Sixth Amendment, and due process rights under the Fourteenth Amendment. (Compl. ¶¶ 137–43). In general, these allegations are sufficient to meet

the abovementioned elements for a *prima facie* claim against Defendant Koczur for violations of § 1983 and the NJCRA.

While the Court finds that these allegations are sufficient to allow Plaintiff's § 1983 and NJCRA claims to survive dismissal at this early stage of the proceedings, there are two caveats to the Court's conclusion.

First, Plaintiff's § 1983 claim is time-barred to the extent that it relates to a claim for false arrest or imprisonment. New Jersey's two-year statute of limitations for personal injury torts governs the statute of limitation for § 1983 claims arising in New Jersey. *Montgomery v. DeSimone*, 159 F.3d 120, 126 (3d Cir. 1998). It is well settled that the statute of limitations for a false arrest/imprisonment claim under § 1983 begins to run once the plaintiff is detained pursuant to legal process. *Wallace v. Kato*, 549 U.S. 384, 391 (2007). Furthermore, Courts in the Third Circuit have found that the discovery rule is inapplicable to cases of false arrest/imprisonment, as a plaintiff will know both of the injury and those responsible at the time of his or her arrest. *See Rolax v. Whitman*, 175 F. Supp. 2d 720, 727 (D.N.J. 2001) (citing cases finding same), *aff'd*, 53 F. App'x 635 (2002). Here, Plaintiff's false arrest claim accrued when he was arraigned at some point between 1994 and 1996, (Compl. ¶¶ 14, 127), which means that the filing of this case in 2016 was far outside of the applicable two-year statute of limitations. Moreover, principles of equitable tolling, such as the discovery rule, cannot apply to Plaintiff's false arrest/imprisonment claim under § 1983, because Plaintiff would "be aware both of his injury, *i.e.*, the wrongful arrest, and those responsible for that injury, *i.e.*, the police, at the time of arrest." *See Rolax*, 175 F. Supp. 2d at 727.

Furthermore, Plaintiff has failed to state a *Monell* claim against Defendant Koczur. As discussed in more detail below, *infra* Section III.D.1.b, a *Monell* claim can only be asserted against

a defendant with policymaking or supervisory authority. Here, Plaintiff does not offer any allegations that Defendant Koczur was a supervisor or policymaker, but rather alleges that Defendant Koczur was a police officer investigating the murder. (Compl. ¶ 16). Besides these two exceptions, however, Plaintiff's § 1983 claims against Defendant Koczur with regard to all other constitutional violations are sufficient to proceed at this juncture. Defendant Koczur has not raised any argument that persuades the Court otherwise. Accordingly, the Court shall grant Defendants' Motion with regard to Count VI and to the extent that Plaintiff's § 1983 claim is related to an allegation of false arrest/imprisonment against Defendant Koczur, but shall continue to analyze Counts III and IV as to the application of qualified immunity.

   b.  *Qualified Immunity*

   The doctrine of qualified immunity shields government officials, such as Defendant Koczur, "from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Walter v. Pike Cty., Pa.*, 544 F.3d 182, 191 (3d Cir. 2008) (stating same). Therefore, to determine whether qualified immunity applies to Plaintiff's claims against Defendant Koczur for violating § 1983 and the NJCRA, the Court "must ask whether the conduct alleged by the plaintiff violated a clearly established principle of constitutional or statutory law[, and] [i]f so, . . . whether the unlawfulness of the action would have been apparent to an objectively reasonable official." *Walter*, 544 F.3d at 191 (internal quotations and citation omitted); *Ramos v. Flowers*, 429 N.J. Super. 13, 24 (App. Div. 2012) (concluding that "the well-established law concerning the affirmative defense of qualified immunity" under § 1983 actions applies to damages claims under the NJCRA).

At this juncture, Plaintiff's allegations are sufficient to overcome Defendant Koczur's assertion that he is entitled to qualified immunity. As the Court already determined above, *supra* Section III.A.1.a., Plaintiff has alleged that Defendant Koczur violated several of his clearly established rights, including but not limited to his Fifth, Sixth, and Fourteenth Amendment rights. In response, Defendant Koczur argues that his actions in investigating Plaintiff at most amount to negligence, which does not divest an officer of qualified immunity. (ECF No. 89-3 at 21). The Court does not agree. Plaintiff alleges, and the Court must accept as true at this stage of the proceedings, that Defendant Koczur *intentionally* and *knowingly* coerced and persuaded witnesses to offer false statements against Plaintiff in an attempt to frame him, which rises above a level of negligence and is not protected by qualified immunity. *See White v. Pauly*, 137 S.Ct. 548, 551 (2017) (stating that qualified immunity will "protect[] all but the plainly incompetent or those who *knowingly* violate the law.") (emphasis added) (internal quotations and citations omitted); *see also Halsey v. Pfeiffer*, 750 F.3d 273, 293 (3d Cir. 2014) ("We emphatically reject the notion that due process of law permits the police to frame suspects. Indeed, we think it self-evident that a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable corruption of the truth-seeking function of the trial process.") (quotations and citations omitted).

Defendant Koczur also argues that qualified immunity applies to Plaintiff's claims under § 1983 and the NJCRA to the extent that they are based on Defendant's alleged failure to disclose information in violation of Plaintiff's rights to confront the witnesses against him and to exculpatory evidence, because a police officer's obligation to disclose said information was not clearly established at the time of Plaintiff's initial murder trial in 1996. (ECF No. 89-3 at 21). In support of this argument, Defendant Koczur relies on a case where the Third Circuit Court of Appeals applied qualified immunity to the plaintiff's *Brady* claim because a police officer's

obligation to disclose exculpatory evidence "was not clearly established in this Circuit at the time of" the plaintiff's conviction in 1994. *Gibson v. Superintendent of N.J. Dep't of Law and Pub. Safety-Div. of State Police*, 411 F.3d 427, 443–44 (3d Cir. 2005), *overruled on other grounds by Dique v. N.J. State Police*, 603 F.3d 181 (3d Cir. 2010).

The Court is not persuaded that the same result should occur in this case. Though Defendant Koczur argues that *Gibson* stands for the proposition that a police officer's obligation to disclose exculpatory evidence was not clearly established until the year 2000, other courts in the Third Circuit have interpreted *Gibson* as holding that said obligation was established at the earliest in 1995, after the United States Supreme Court's decision in *Kyles v. Whitley*, 514 U.S. 419, 421 (1995). *See Thomas v. City of Phila.*, 290 F. Supp. 3d 371, 384 (E.D. Pa. Feb. 2, 2018) ("In *Gibson* . . . the Third Circuit Court of Appeals held that officers' *Brady* obligations were 'not clearly established at the time of [the plaintiff's] prosecution in 1994.' . . . Those obligations became clearly established in 1995, when the Supreme Court decided *Kyles* . . . .") (citations omitted); *Domenech v. City of Phila.*, No. 06-1325, 2009 WL 1109316, at *7 (E.D. Pa. Apr. 23, 2009) ("[I]n *Gibson* the Third Circuit also found that before 1995 police officers were entitled to immunity if they failed to produce exculpatory evidence, because their obligation to turn over this evidence was not clearly established constitutional law until 1995, at the earliest"). The Court shall follow these courts' interpretations of *Gibson*, 411 F.3d at 443–44, and, considering Plaintiff's prosecution and conviction occurred in 1996, *i.e.*, after the Supreme Court's decision in *Kyles*, 514 U.S. at 421, the Court shall not apply qualified immunity to Plaintiff's claims against Defendant Koczur to the extent that they relate to a violation of *Brady*, 373 U.S. at 87, or the Confrontation Clause. Accordingly, Defendants' Motions are denied to the extent that they seek dismissal of Counts III and IV against Defendant Koczur.

## 2. § 1985

To state a § 1985(3) conspiracy claim, a plaintiff must show: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828–29 (1983)). A plaintiff must also allege both "that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Id.* at 135. "[C]laims under [§] 1985 must be pleaded with specificity in order to withstand a motion to dismiss. Broad, conclusory allegations, unsupported by specific facts implicating specific defendants are insufficient to state a claim upon which relief can be granted." *Martin v. Del. Law Sch. of Widener Univ.*, 625 F. Supp. 1288, 1297 (D. Del. 1985), *aff'd*, 884 F.2d 1384 (3d Cir. 1989) (internal citation omitted).

The Court finds that Plaintiff has failed to meet the first element of a *prima facie* claim under § 1985, because Plaintiff does not set forth any factual allegations showing that Defendant Koczur conspired with any other defendant to allegedly frame Plaintiff and/or withhold evidence. "To constitute a conspiracy, there must be a 'meeting of the minds.'" *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). Here, Plaintiff does not set forth facts sufficient to show that any of the defendants, besides Defendant Koczur, agreed to or were even aware that the testimony of McCall and Johnson was allegedly coerced and fabricated. Moreover, as discussed in the Court's prior Opinion and in the

following sections, Plaintiff cannot show that some of these defendants violated Plaintiff's rights at all, let alone conspired with Defendant Koczur to do so.

Though Plaintiff's Complaint offers conclusory statements that the defendants conspired to deprive him of his rights, (Compl. ¶¶ 41, 145), such broad allegations are not sufficient for a § 1985 claim to survive the motion to dismiss stage. *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009) (stating that allegations of conspiracy must provide "some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action.") (citations omitted); *see also Watson v. Sec'y Pa. Dep't of Corr.*, 436 F. App'x 131, 137 (3d Cir. 2011) (affirming dismissal of conspiracy claim, finding plaintiff's "allegations of conspiracy to be conclusory and wanting" where plaintiff "invoke[d] 'conspiracy,' but fail[ed] to plead an actual agreement between the parties").

Furthermore, this analysis of Plaintiff's failure to state a § 1985 claim applies not only to Defendant Koczur but to all remaining Defendants to the extent said claim against them is not already dismissed under the various immunities discussed in the following sections. Therefore, because Plaintiff failed to allege an agreement between any of the defendants in this case, the Court shall grant Defendants' Motions to dismiss Count V against Defendant Koczur and, more broadly, to dismiss Count V against all remaining Defendants.

3. Tort Claims

   a. *Time-Barred*

Defendant Koczur argues that all of Plaintiff's common law claims must be dismissed because they are time-barred. Defendant Koczur is correct that under the New Jersey Tort Claims Act ("the NJTCA"), which governs tort claims brought under New Jersey law against a public entity, a person is "forever barred from recovering against a public entity or public employee if:

14

(a) [said person] failed to file the claim with the public entity within 90 days of accrual of the claim . . . or (b) [t]wo years have elapsed since the accrual of the claim . . . ." N.J.S.A. 59:8-8. Defendant Koczur is also correct that some of Plaintiff's common law claims accrued on the date of the alleged injury. *See Amland Props. Corp. v. Aluminum Co. of Am.*, 808 F. Supp. 1187, 1190 (D.N.J. 1992) ("Ordinarily, the statute of limitations for an action begins to run when all the elements of the cause of action are present or, more plainly, 'from the moment of the wrong.'") (quoting *Lopez v. Swyer*, 62 N.J. 267, 274 (1973)).

According to Defendant Koczur, Plaintiff's common law claims accrued in or around 1996, when he was allegedly injured based on his arrest, prosecution, and conviction; and therefore, the notice of claim filed in October 2016 and the filing of this action in March 2018 were past the expiration of the ninety-day requirement and two-year statute of limitations, respectively. (ECF No. 89-3 at 14). The Court does not agree with this argument as to Plaintiff's malicious prosecution claim, because said claim did not accrue until Plaintiff's second murder trial was dismissed in his favor in or around July 2016. *See Geissler v. Atlantic City*, 198 F. Supp. 3d 389, 402 (D.N.J. 2016) ("It is well-settled that a malicious prosecution claim [under New Jersey law] does not accrue until the criminal proceeding has terminated in a plaintiff's favor."). Considering Plaintiff filed notice in early October 2016, *i.e.*, within ninety days of the July 2016 accrual date, and this action in January 2018, *i.e.*, within two years of the July 2016 accrual date, the Court concludes that Plaintiff's malicious prosecution claim against Defendant Koczur is not time-barred under the NJTCA.

Furthermore, even if the Court were to accept Defendant Koczur's accrual argument as to Plaintiff's remaining IIED, NIED, and abuse of process claims, it would nevertheless be appropriate to apply the discovery rule to same. *See Beauchamp v. Amedio*, 164 N.J. 111, 117

(2000) ("[t]he only exception to that well established notion of accrual is the case where the victim either is unaware that he has been injured or, although aware of an injury, does not know that a third party is responsible."). Specifically, the discovery rule delays "the accrual of a cause of action until the injured party discovers, or by the exercise of reasonable diligence should discover, that the elements of a claim exist." *Michaels v. State of N.J.*, 955 F. Supp. 315, 326 (D.N.J. 1996) (citations omitted).

Here, the Court agrees with Plaintiff that he could not have known about his current claims until he and his counsel for the second murder trial discovered the allegedly coerced and fabricated evidence against him, and Defendant Koczur's alleged failure to disclose same. (Compl. ¶¶ 39, 72). Though Plaintiff does not provide a specific date, the Court nevertheless concludes that Plaintiff's discovery of this information must have occurred in or before June 2016, because Plaintiff alleges: (1) that his counsel inquired into whether Johnson was a confidential informant "prior to Plaintiff Pierre's retrial" and the assistant prosecutor promptly disclosed said information; and (2) that his second murder trial began in June 2016. (Compl. ¶ 39, 72). Therefore, the Court shall utilize the discovery rule to toll the accrual of Plaintiff's common law causes of action to sometime in or before June 2016.

Under this analysis, Plaintiff's causes of action are timely under the two-year statute of limitations period imposed by the NJTCA, considering Plaintiff brought this action in January 2018 and the Court is applying an accrual date in or before June 2016. However, Plaintiff's IIED, NIED, and abuse of process claims must nevertheless be dismissed, because Plaintiff did not file a notice of claim within ninety days as dictated by the NJTCA. Specifically, Plaintiff concedes that he submitted his notice of filing on October 3, 2016, (ECF No. 95 at 3), which was filed more than ninety days from the accrual date that occurred as to these claims in or before June 2016.

Having found that Plaintiff's notice of claim was not timely filed as to Counts VII, VIII, and X, the Court must determine whether extraordinary circumstances are present so that the Court can excuse the late filing. Specifically, the NJTCA allows a claimant to file notice within one year after the accrual of his or her claims if: (1) the public employee would not be "substantially prejudiced" by the Court doing so; and (2) the claimant demonstrated through personal knowledge that "extraordinary circumstances" existed to explain why the notice of claim was filed late. *Tripo v. Robert Wood Johnson Med. Ctr.*, 845 F. Supp. 2d. 621, 630–31 (D.N.J. 2012). Here, Plaintiff has not presented any extraordinary circumstances to excuse his late filing of notice. In fact, Plaintiff only addresses the notice of claim in his brief by stating, without more, that "[t]he Notice of Claim was timely filed." (ECF No. 95 at 13). Even if Plaintiff addressed the issue in more detail, however, the Court does not find it likely that Plaintiff under these facts would have articulated the extraordinary circumstances required by the NJTCA. *See Forcella v. City of Ocean City*, 70 F. Supp. 2d 512, 517 (D.N.J. 1999) (holding that a claimant's ignorance as to the NJTCA's ninety-day requirement alone does not qualify as extraordinary circumstances.); *Blank v. City of Elizabeth*, 162 N.J. 150, 151 (1999) (analyzing that a claimant's lack of due diligence in discovering the proper defendants alone does not constitute extraordinary circumstances.). Therefore, the Court finds that Plaintiff's IIED, NIED, and abuse of process claims are time-barred and shall grant Defendants' Motions to dismiss Counts VII, VIII, and X against Defendant Koczur.

b. *Failure to State a Claim*

Having found that all of Plaintiff's common law claims are time-barred except his claim for malicious prosecution, the Court must now analyze whether Plaintiff stated a claim for Count IX. To successfully state a *prima facie* claim of malicious prosecution under New Jersey law, a plaintiff must show that: "(1) the previous action was initiated by the defendant; (2) the action was

motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably for the plaintiff." *Land v. Helmer*, 843 F. Supp. 2d 547, 550 (D.N.J. 2012) (quoting *Lind v. Schmid*, 67 N.J. 255, 262 (1975)). "The essence of the cause of action is lack of probable cause, and the burden of proof rests on the plaintiff." *Id.* (quoting *Lind*, 67 N.J. at 262).

Here, Plaintiff has sufficiently pled all of the elements of a *prima facie* claim for malicious prosecution at this early stage of the proceedings. Specifically, Plaintiff alleges that Defendant Koczur initiated criminal proceedings against him without probable cause by coercing witnesses to falsely implicate Plaintiff in a murder and using said witnesses as the basis for Plaintiff's arrest and conviction. (Compl. ¶¶ 38–39, 41). Plaintiff also alleges that the criminal proceedings against him eventually ended in his favor as his conviction was overturned and he was granted a judgment of acquittal for lack of evidence in his second murder trial. (Compl. ¶¶ 70–71). Plaintiff further alleges that Defendant Koczur was aware that Plaintiff's arrest and conviction were based on the false testimony of McCall and Johnson, and that Defendant Koczur intentionally and maliciously did not disclose same. (Compl. ¶¶ 38–39, 41). Because Plaintiff has alleged facts to support each element of a *prima facie* claim for malicious prosecution, Count IX against Defendant Koczur survives dismissal at this time.

In summary, the Court shall grant Defendants' Motions to the extent that they seek to dismiss Counts V, VI, VII, VIII, X, and any false arrest/imprisonment claim under § 1983 against Defendant Koczur, but shall deny Defendants' Motions to the extent that they seek to dismiss Counts III, IV, and IX against Defendant Koczur.

## B. Defendant Luby

### 1. Failure to State a Claim

Unlike his claims against Defendant Koczur, Plaintiff has not set forth sufficient factual allegations to show that Defendant Luby violated a constitutional right or possessed the intent or involvement necessary to establish any of Plaintiff's claims. The only allegations made against Defendant Luby in Plaintiff's Complaint are that Defendant Luby took statements from McCall that "were false and damaging to the Plaintiff's alibi," and that he improperly interviewed two witnesses simultaneously. (Compl. ¶ 43). Outside of conclusory statements, Plaintiff does not state that Defendant Luby: (1) was involved in Plaintiff's arrest or prosecution in any way as to establish a duty to disclose exculpatory evidence; (2) was a supervisor or policy maker; or (3) intentionally or knowingly fabricated or withheld evidence. At most, Defendant Luby's alleged failure to consider other evidence in interviewing McCall and to separate two witnesses during an interview can be construed as the performance of an unsatisfactory investigation, which does not rise to the level of violating Plaintiff's constitutional rights. *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995) (stating that a law enforcement official's negligent investigation is not material to the determination of whether or not said official violated an individual's constitutionally protected rights); *Mattis v. Vaughn*, 128 F. Supp. 2d 249, 266 n.15 (E.D. Pa. 2001) (explaining that a police officer's knowledge of potentially exculpatory information that was relevant to a murder trial did not give rise to a *Brady* obligation when the officer was not involved or "acting on the government's behalf" in said murder trial) (quoting *Kyles*, 514 U.S. at 437). Accordingly, the Court finds that Plaintiff has failed to state any claim against Defendant Luby.

## 2. Qualified Immunity

Even if the Court found that Plaintiff's allegations were sufficient to state a claim to relief, Defendant Luby would nevertheless be entitled to qualified immunity. As stated above, qualified immunity is not applicable to claims under §§ 1983, 1985, and the NJCRA if the alleged conduct violated a clearly established right that would have been apparent to a reasonable officer. *See Walter*, 544 F.3d at 191; *see also Downey v. Coalition Against Rape & Abuse, Inc.*, 143 F. Supp. 2d 423, 447 (D.N.J. 2001) (analyzing qualified immunity for claims under both §§ 1983 and 1985). Similar to the determination regarding certain police defendants in the Court's prior Opinion, (ECF No. 66 at 21–22), it would be contradictory for the Court to find that Plaintiff's allegations against Defendant Luby give rise to a violation of a "clearly established right" when it already concluded above that Plaintiff failed to show a constitutional violation committed by Defendant Luby in the first place. Accordingly, the Court shall grant Defendants' Motions to the extent that they seek to dismiss all claims against Defendant Luby for failure to state a claim or in the alternative under qualified immunity.

## C. Defendant Union

Though the Court's prior Opinion found that Plaintiff can sufficiently state a *prima facie* claim for NIED against Defendant Union, the Court's holdings in this Opinion have created new circumstances whereby the Court must dismiss said claim. The NJTCA states that "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J.S.A. 59:2-2(a). The NJTCA goes on to clarify that "[a] public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable." N.J.S.A. 59:2-2(b). Here, the Court has already found that

Plaintiff's NIED claim must be dismissed against all of the possible employees of Defendant Union, *i.e.*, the police officer defendants, and therefore Defendant Union cannot be held liable under the plain language of the NJTCA. *See Davis v. City of Camden*, 657 F. Supp. 396, 404 (D.N.J. 1987) (citing N.J.S.A. 59:2-2(b) and finding that a public entity was entitled to immunity to the same extent that the public employee was entitled to immunity). Furthermore, Plaintiff's NIED claim would be time-barred against Defendant Union for the same reasons it is time-barred against Defendant Koczur as explained above, *supra* Section III.A.3.a.

This conclusion does not contradict the Court's prior Opinion, as the Court's initial determination was based on the fact that Defendant Union could potentially be liable for the negligence of the police officer defendants, some of whom, such as Defendant Koczur, had not yet moved before or been analyzed by this Court. (ECF No. 66 at 11 n.3, 13, 21 n.5). Furthermore, neither the issue of whether Plaintiff's NIED claim was time-barred nor the date of Plaintiff's notice of claim filing were raised or provided to the Court when it decided the prior Opinion. However, in light of the new circumstances described above including the dismissal of all police defendants and the finding that the NIED claim is time-barred, the Court now concludes that it is appropriate to dismiss Count VIII against Defendant Union.

## D. Defendants Elizabeth & Elizabeth PD

### 1. § 1983 & NJCRA

#### a. *Defendant Elizabeth PD*

As an initial matter, Defendant Elizabeth PD argues that it should be dismissed from this action because Plaintiff's claims against it are duplicative of his claims against Defendant Elizabeth. (ECF No. 89-3 at 22). In regard to Plaintiff's § 1983 and NJCRA claims, the Court agrees that "[p]olice departments cannot be sued in conjunction with municipalities, because the

police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." *Trafton*, 799 F. Supp. 2d at 430 (quoting *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004)); *see also id.* at 444 (applying same reasoning to NJCRA claim). Because Defendant Elizabeth PD is an administrative arm of Defendant Elizabeth, which is also a defendant in this case, Defendant Elizabeth PD is not a proper defendant as to Plaintiff's claims under § 1983 and the NJCRA. *See Bonenberger v. Plymouth Twp.*, 132 F. 3d 20, 25 (3d Cir. 1997); *Adams v. City of Camden*, 461 F. Supp. 2d 263, 266 (D.N.J. 2006) (granting summary judgment as to municipal police department as an improper defendant because New Jersey police departments are "an executive and enforcement function of municipal government") (quoting N.J.S.A. 40A:14-118). Therefore, the Court dismisses Counts III, IV, and VI against Defendant Elizabeth PD.

   b.   *Defendant Elizabeth*

   As discussed above, a plaintiff must allege two elements to bring a § 1983 claim: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. *See West*, 487 U.S. at 48. It has long been established that the principle of *respondeat superior* cannot be used to hold a municipal or local government liable under § 1983. *Monell*, 436 U.S. at 694. Specifically, the Supreme Court has stated that:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.*

The Supreme Court has stated that *Monell* liability only attaches "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. Cincinnati*, 475 U.S. 469, 482 (1986). As an alternative to showing an unlawful or improper policy, *Monell* liability also applies to a defendant's custom of improper conduct "where the relevant practice is so permanent and 'widespread as to have the force of law.'" *Hernandez v. Borough of Palisades Park Police Dep't*, 58 F. App'x 909, 912 (3d Cir. 2003) (citing *Bryan Cty. Comm'r v. Brown*, 520 U.S. 397, 404 (1997)); *see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 2007) (analyzing same). This analysis also applies to claims under the NJCRA. *See Endl v. N.J.*, 5 F. Supp. 3d 689, 697 (D.N.J. 2014) ("In particular, the definitions of 'person' under the [§ 1983 and NJCRA] have been interpreted in parallel.") (citing *Didiano v. Balicki*, 488 F. App'x 634, 638 (3d Cir. 2012)).

As an initial matter, Counts III, IV, and V are brought against Defendant Elizabeth for the individual conduct of its police officer agents,[2] (*see* Compl. ¶¶ 135–45), and same must be dismissed pursuant to the principles of *Monell*, 436 U.S. at 694. For Count VI , which specifically asserts a *Monell* claim, Plaintiff has sufficiently alleged that Defendant Elizabeth is vested with supervisory and policy making authority over the officers of Defendant Elizabeth PD, and that its failure to train, supervise, and discipline its subordinates resulted in a pattern or practice that condones the kind of allegedly improper conduct which occurred in this case. (Compl. ¶¶ 148–52). Nevertheless, Plaintiff has failed to direct the Court to any policy or custom of Defendant Elizabeth or any of the named institutional defendants condoning this allegedly improper behavior. (*See* Compl. ¶¶ 146–58). Moreover, Plaintiff's speculative allegation that there were "other instances" of similar violations, (Compl. ¶ 46), is not sufficient to show that Defendant Elizabeth

---

[2] As explained below, *infra* Section III.E.1, the prosecutor defendants in this case, *i.e.*, Defendants Rubin and Furda, were not agents of Defendant Elizabeth but rather were agents of the State.

was aware of the kind of systemic violation required for a *Monell* claim. *See Bielevicz*, 915 F.2d at 851 (explaining that *Monell* liability attaches when "policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury."). Therefore, the Court shall grant Defendants' Motions to the extent that they seek to dismiss Counts III, IV, V, and VI against Defendant Elizabeth.

2. Tort Claims

a. *Intentional*

As to Counts VII, IX, and X, the Court's prior Opinion already analyzed that a public entity, such as Defendants Elizabeth and Elizabeth PD, may not be held liable for intentional torts allegedly committed by its employees. *See Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 767 (D.N.J. 2016); *Soto v. City of Newark*, 72 F. Supp. 2d 489, 497 (D.N.J. 1999) (holding that a public entity may not be held liable for the intentional torts of a public employee) (citing *McDonough v. Jorda*, 214 N.J. Super. 338, 350 (App. Div. 1986)). Accordingly, these Counts must be dismissed against Defendants Elizabeth and Elizabeth PD.

b. *Negligence*

For reasons identical to those in the Court's determination of Count VIII against Defendant Union above, *supra* Section III.C, the Court must dismiss Count VIII against Defendants Elizabeth and Elizabeth PD, as said claim was: (1) dismissed against all possible police officer employees of Defendants Elizabeth and Elizabeth PD; and (2) found to be time-barred. In conclusion, the Court shall grant Defendants' Motions as to all of Plaintiff's claims against Defendants Elizabeth and Elizabeth PD.

**E. Defendants Rubin & Furda**

1. Official Capacity § 1983 and the NJCRA Claims

In suits against a defendant in his or her official capacity, the only immunities that are available "are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment." *Ky. v. Graham*, 473 U.S. 159, 167 (1985) (analyzing suit brought under § 1983); *see also Brown v. State*, 442 N.J. Super. 406, 426 (App. Div. 2015) ("Given that the Legislature did not choose to include an express waiver of sovereign immunity in the [NJCRA] and that the State enjoys immunity under the analogous § 1983, we conclude that the State is immune from a suit for damages under the [NJCRA]."), *rev'd on other grounds,* 230 N.J. 84, 90 (2017). The well-recognized doctrine of sovereign immunity, embodied in the Eleventh Amendment to the United States Constitution, provides that the States are immune from suit in federal court. *See, e.g., Alden v. Maine*, 527 U.S. 706, 712–13 (1999); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989). Sovereign immunity is not limited to the State itself, but rather extends to state agencies and state officers who act on behalf of the State. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).

Pursuant to the law in this Circuit, "[w]hen county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State." *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996), *abrogated on other grounds, Nance v. City of Newark*, 501 F. App'x 123, 129 n.7 (3d Cir. 2012); *see also Banda v. Burlington Cty.*, No. 03-2045, 2006 WL 2739718, at *4 (D.N.J. 2006) (explaining that "several courts [in this District] have held that New Jersey county prosecutors' offices are entitled to Eleventh Amendment immunity from suits arising out of the exercise of prosecutorial powers"). Alternatively, when a county prosecutor is engaged in administrative functions "unrelated to the duties involved in criminal prosecution,"

such as the promotion of employees, said prosecutor is acting as a local or county official and is not entitled to sovereign immunity. *Coleman*, 87 F.3d at 1506.

In the current case, the Court finds that the alleged conduct of Defendants Rubin, who represented the state in the murder case against Plaintiff and presented witnesses during said trial, and Defendant Furda, who took statements from McCall and testified before the Grand Jury, clearly relates to "classic law enforcement and investigative functions." *See, e.g., Woodyard v. Cty. of Essex*, 514 F. App'x 177, 182 (3d Cir. 2013) (holding that defendant was entitled to sovereign immunity against claims that it arrested, detained and prosecuted plaintiff without probable cause). In response, Plaintiff again misconstrues his arguments under sovereign immunity and instead cites to case law related to absolute prosecutorial immunity, which is discussed below. (*See* ECF No. 97 at 11–20). Nevertheless, because the Court finds it clear that Defendants Rubin and Furda were acting as agents of the State, they are entitled to sovereign immunity, and Counts III, IV, V, and VI against them in their official capacities must be dismissed.

2. Individual Capacity §§ 1983, 1985, and NJCRA Claims

a. *Absolute Prosecutorial Immunity*

It is well settled that "a state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). The Supreme Court held that a prosecutor is absolutely immune from actions that are "intimately associated with the judicial phase of the criminal process" while functioning as an advocate for the State. *Id.* at 430–31; *see also Moore v. Middlesex Cty. Prosecutor's Office*, 503 F. App'x 108, 109 (3d Cir. 2012) ("Although a prosecutor's deliberate destruction of exculpatory evidence is not entitled to absolute immunity, the decision to withhold such evidence from the defense while functioning as an advocate for the State is protected by

26

absolute immunity."). Since *Imbler*, the Supreme Court has held that "absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search warrant application." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (citations omitted). On the other hand, a prosecutor's actions that are taken in an investigative or administrative capacity may be protected by qualified immunity only. *See Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992); *see also Yarris v. Cty. of Del.*, 465 F.3d 129, 138 (3d Cir. 2006) (reasoning that the handling of a request for scientific test on evidence made after conviction may "be best described as part of the prosecutor's administrative duties.") (quotations and citations omitted). This analysis also applies to claims under NJCRA. *See Simmons v. Roxbury Police Dep't*, No. 17-2526, 2017 WL 5188060, at *11 (D.N.J. Nov. 9, 2017) (applying absolute prosecutorial immunity to a plaintiff's NJCRA claim).

Here, Defendant Rubin allegedly pursued "mutually exclusive" theories before the jury during Plaintiff's murder trial and presented Johnson as a witness, who Defendant Rubin supposedly should have known was a confidential informant. (Compl. ¶¶ 38–39, 44). Defendant Furda allegedly took statements from McCall that he "should have known were false and damaging to the Plaintiff's alibi" and testified before the Grand Jury to secure an indictment against Plaintiff. (Compl. ¶¶ 42–43). Despite Plaintiff's arguments to the contrary, (ECF No. 97 at 11–21, 24–26), Defendant Rubin and Furda's conduct representing the state at trial and securing an indictment from the Grand Jury constitutes "the core of the prosecutorial function." *Munchinski v. Solomon*, 618 F. App'x 150, 154 (3d Cir. 2015) (holding that a prosecutor was entitled to absolute immunity from the plaintiff's claim that the prosecutor ignored inconsistent evidence in determining whether there was probable cause for his arrest); *see also Ray v. N.J.*, 219 F. App'x 121, 124 (3d Cir. 2007)

(explaining that prosecutorial immunity also extends to decisions to seek an indictment and to preparations for a grand jury) (citations omitted).

To the extent that Defendants Rubin and Furda's alleged conduct was performed out of court, such as Defendant Furda's interview of McCall, said conduct was nevertheless in preparation for the criminal proceedings against Plaintiff. *See Burns v. Reed*, 500 U.S. 478, 485 (1991) ("the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.") (quoting *Imbler*, 424 U.S. at 431 n.33); *see also Jerrytone v. Musto*, 167 F. App'x 295, 300 (3d Cir. 2006) ("[p]rosecutors enjoy absolute immunity . . . for evaluation of evidence collected by investigators, and for failure to conduct [an] adequate investigation before filing charges.") (internal citations omitted). Therefore, Defendants Rubin and Furda are entitled to absolute prosecutorial immunity, and Counts III, IV, V, and VI against them in their individual capacities must be dismissed.

   *b. Qualified Immunity*

Although the Court finds that absolute prosecutorial immunity applies to Defendants Rubin and Furda, it will also address the alternative possibility that Defendants Rubin and Furda are protected by qualified immunity. *See Yarris*, 465 F.3d at 140 (noting that when a district court determines whether a prosecutor is immune from a civil rights claim, it would be helpful for the purposes of a potential appeal if that district court were to address both absolute and qualified immunity in the first instance). As stated above, qualified immunity does not apply to Plaintiff's claims if the alleged conduct "violated a clearly established principle of constitutional or statutory law" and "the unlawfulness of the action" was "apparent to an objectively reasonable official." *Walter*, 544 F.3d at 191 (internal quotations and citation omitted).

As discussed above, Plaintiff alleges that Defendants Rubin and Furda's presentation of misleading evidence and failure to disclose that one of their witnesses was a police informant violated Plaintiff's rights. (Compl. ¶¶ 135–143). However, Plaintiff's Complaint does not allege that Defendants Rubin and Furda *intentionally* elicited evidence they knew to be false or that they acted "in bad faith or with an improper motive." *Bowser v. Borough of Freehold*, 99 F. App'x 401, 404 (3d Cir. 2004). Rather, Plaintiff alleges that Defendant Rubin, based on her seniority and expertise as a prosecutor, *should* have deduced that Johnson was a confidential informant, because Johnson's criminal record reflected that Johnson had been arrested numerous times but was never convicted. (Compl. ¶ 39). Similarly, Plaintiff alleges that Defendant Furda took statements from McCall and presented evidence to the Grand Jury that he *should* have realized was false and that undermined Plaintiff's alibi. (Compl. ¶¶ 42–43).

These allegations, without more, are not sufficient to show the violation of a "clearly established constitutional right." *Mierzwa v. City of Garfield*, 170 F. App'x 212, 215 (3d Cir. 2005) (affirming the district court's conclusion that a prosecutor was entitled to qualified immunity from the plaintiff's claim that the prosecutor mishandled the investigation underlying the criminal charges that were brought against the plaintiff); *see also Wilson v. Russo*, 212 F.3d 781, 789 n.5 (3d Cir. 2000) (stating that an unsatisfactory or even negligent investigation does not deny a defendant entitlement to qualified immunity). Accordingly, Defendants Rubin and Furda are entitled to qualified immunity.

3. Tort Claims

To the extent that any of Plaintiff's common law causes of action against Defendants Rubin and Furda are not dismissed under the analysis above, these defendants are nevertheless immune from suit under the NJTCA. Specifically, the NJTCA provides that "[a] public employee is not

liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment." N.J.S.A. 59:3-8. This provision is qualified to the extent that "this act shall [not] exonerate a public employee from liability if it is established that his conduct was outside of the scope of his employment or constituted a crime, actual malice or willful misconduct." N.J.S.A. 59:3-14(a). As the Court already found above, Defendants Rubin and Furda were acting within their roles as prosecutors in relation to the conduct alleged by Plaintiff in his Complaint and did not *intend* to withhold information or elicit evidence that they *knew* to be false. Therefore, the immunity provided in the NJTCA applies to Plaintiff's common law claims against Defendants Rubin and Furda.[3] Accordingly, Defendants' Motions are granted to the extent that they seek to dismiss all of Plaintiff's claims against Defendants Rubin and Furda.

## IV. CONCLUSION

For the aforementioned reasons, the Court hereby grants Defendants' Motions to the extent that they seek to dismiss: (1) all claims against Defendants Luby, Union, Elizabeth, Elizabeth PD, Rubin, and Furda; and (2) Counts V, VI, VII, VIII, X, and any § 1983 claim for false arrest/imprisonment against Defendant Koczur. However, the Court hereby denies Defendants' Motions to the extent that they seek to dismiss Counts III, IV, and IX against Defendant Koczur. An appropriate Order follows this Opinion.

Dated: May *14th*, 2019.

JOSE L. LINARES
Chief Judge, United States District Court

---

[3] Though Defendant Koczur does not address immunity under the NJTCA in his briefs, the Court nevertheless notes that this analysis may not apply to Plaintiff's common law claims against Defendant Koczur because Defendant Koczur allegedly acted outside the scope of his employment and/or with "willful misconduct" by fabricating evidence against Plaintiff. *See* N.J.S.A. 59:3-14(a).